UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SYNERGY CHC CORP., | ) |
|         Plaintiff | ) |
| v. | ) No. 2:22-cv-00301-JAW |
| HVL, LLC, d/b/a ATRIUM INNOVATIONS, | ) |
|         Defendant | ) |

**RECOMMENDED DECISION ON MOTION TO DISMISS**

Defendant HVL, LLC, doing business as Atrium Innovations, moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss claims by Plaintiff Synergy CHC Corp. for negligent misrepresentation (Count III) and fraud (Count IV) primarily on the basis of failure to plead both claims with particularity pursuant to Federal Rule of Civil Procedure 9(b). *See* Motion to Dismiss (MTD) (ECF No. 21) at 1-2; First Amended Complaint (FAC) (ECF No. 19) ¶¶ 99-110.[1]

With the benefit of oral argument on February 1, 2023, I conclude that Synergy fails to plead its fraud claim with particularity pursuant to Rule 9(b) but that its negligent misrepresentation claim is not subject to that heightened standard. I, therefore, recommend that the Court grant the motion to dismiss as to Count IV, deny it as to Count III, dismiss Count IV without prejudice, and direct that Synergy file a

---

[1] Atrium also sought dismissal of a claim by Synergy for unfair or deceptive trade practices (Count V), *see* MTD at 1-2; FAC ¶¶ 111-14; however, that request was mooted by the Court's grant of Synergy's unopposed motion to dismiss that claim, *see* ECF Nos. 28-29. The MTD does not implicate Synergy's claims for breach of contract (Count I) and breach of warranty (Count II). *See* FAC ¶¶ 84-98.

1

motion to amend its complaint, together with its proposed amended complaint, no later than two weeks from the date of the Court's order, failing which Count IV of the Complaint will be dismissed with prejudice.

## I. Background

Synergy is a consumer healthcare and beauty company that sells, among other products, FOCUSfactor, a brain health supplement brand. FAC ¶¶ 18-19. Atrium manufactures and delivers products both for itself and, historically, for third-party customers. *Id.* ¶ 21. For approximately twenty years, Atrium manufactured and delivered FOCUSfactor products to Synergy pursuant to specifications agreed by the parties, including that the product be delivered with a shelf life of either thirty or thirty-six months. *Id.* ¶¶ 22-26.

The parties' contract manufacturing relationship was governed by a purchase order and invoice process, whereby Synergy would issue purchase orders to Atrium and Atrium would acknowledge the orders, manufacture the products, deliver the products to Synergy, and invoice Synergy for the orders. *Id.* ¶ 32. Synergy's purchase orders often, but not always, contained product delivery dates with which Atrium usually complied prior to the incidents at issue. *Id.* ¶¶ 33-34. Atrium also informed Synergy of its delivery dates on its acknowledgements of Synergy's purchase orders. *Id.* ¶ 35. Atrium typically delivered products to Synergy within two months of production. *Id.* ¶ 37.

In the spring of 2020, Atrium began delaying the manufacture and delivery of products to Synergy. *Id.* ¶ 38. Between April 17, 2020, and January 18, 2021,

Synergy issued nine purchase orders to Atrium for more than $14 million in FOCUSfactor products, which represented the vast majority of products that Synergy intended to sell in the second half of 2020 and in 2021 to fulfill purchase orders from its customers. *Id.* ¶¶ 39-41.[2] Atrium accepted those orders without objecting to their terms and acknowledged their receipt in writings containing a "Promised Ship Date." *Id.* ¶¶ 42, 51. At the time Atrium received the purchase orders, it did not inform Synergy that there would be any delay in the manufacture or delivery of the products. *Id.* ¶ 55.

In late spring or early summer 2020, Atrium unilaterally paused the manufacturing process for the FOCUSfactor products Synergy had ordered. *Id.* ¶ 57. Upon information and belief, Atrium did so to produce more of its own products and knew (but did not disclose to Synergy) that it would cease its contract manufacturing work for Synergy in 2022. *Id.* ¶¶ 58-59. Atrium began to inform Synergy in early summer 2020 that the manufacture of FOCUSfactor products was delayed in some respect but failed to disclose that the delay would last for months and falsely attributed the problem to COVID, testing delays, supply chain challenges, staffing problems, and issues sourcing raw material. *Id.* ¶ 60.

Initially, when Synergy inquired about the status of specific purchase orders during weekly meetings of Atrium and Synergy representatives, Atrium informed Synergy that the manufacturing of FOCUSfactor products was continuing and that deliveries of then-pending orders were imminent. *Id.* ¶ 61. As the delays continued,

---

[2] Synergy lists precise dates for each purchase order and appends redacted copies to the complaint. FAC ¶ 39; Exhs. A-I thereto.

Synergy continued to inquire about pending orders. *Id.* ¶ 62. Representatives of Atrium, including high-level officers, advised Synergy that Atrium was prioritizing Synergy's pending orders. *Id.* Synergy relied on Atrium's representations that it would continue to manufacture FOCUSfactor products as ordered, which was consistent with its past course of dealing and the terms of the purchase orders. *Id.* ¶ 63. Atrium did not tell Synergy the truth about the manufacturing delays until at least late summer/early fall 2020. *Id.* ¶ 64.

When Synergy communicated with Atrium about the delays, Atrium refused to commit to a date on which the FOCUSfactor products would be manufactured and sent to Synergy. *Id.* ¶ 65. Atrium delivered the products at issue several months after it should have in the regular course of the parties' dealing. *Id.* ¶ 66. For example, although HVL PO7 sought deliveries of one-third of the order on April 30, 2021, one-third on May 31, 2021, and one-third on June 30, 2021, Atrium did not start delivery of the bulk of the products until June 30, 2021, and did not complete delivery until November 5, 2021. *Id.* ¶ 69.

When Atrium did deliver products, they had a significantly shorter shelf life, to Synergy's detriment. *Id.* ¶¶ 70-71. Many of Synergy's customers return products, expecting a full refund, if those products have not sold at least a year before their expiration dates. *Id.* ¶ 72. Atrium's delays also forced Synergy to short-ship or cease shipping to many of its key big box customers, preventing it from fulfilling more than $5 million in orders for FOCUSfactor. *Id.* ¶¶ 74-75.

In reliance on Atrium's false and negligent misrepresentations, Synergy did not initially seek out an alternative third party to manufacture FOCUSfactor, instead continuing to work with and submit purchase orders to Synergy. *Id.* ¶¶ 76-77. Synergy contracted with a different third-party manufacturer in early fall 2020 but did not begin receiving products from that manufacturer until February 2021. *Id.* ¶¶ 78-79. Despite Synergy's efforts, it has been unable to sell much of the product whose manufacturing was paused by Atrium. *Id.* ¶ 83.

## II. Legal Standards

A court reviewing a motion to dismiss for failure to state a claim must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (cleaned up). Generally, a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and need not set out "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "But gauzy generalities will not suffice; a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011) (cleaned up).

Federal Rule of Civil Procedure 9(b) governs the pleading requirements for fraud claims, including those predicated on state law. *See Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) ("Although state law governs the burden of proving fraud at

5

trial, the procedure for pleading fraud in federal courts in all diversity suits is governed by the special pleading requirements of . . . Rule 9(b).").

Per Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Those circumstances "generally consist of the who, what, where, and when of the allegedly misleading representation." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 38 (1st Cir. 2019) (cleaned up). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), and "elements [that] do not fall within the who, what, where, and when taxonomy . . . need only comply with the plausibility standard that customarily controls the adequacy of pleadings," *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 50 (1st Cir. 2020) (cleaned up).

While allegations concerning state of mind are subject to the more liberal pleading standards of Rule 8(a)(2), a plaintiff must lay out sufficient facts from which malice, intent, knowledge, or other states of mind can be reasonably inferred. "[A]ctual-malice buzzwords"—for example, that a party "had 'knowledge' that its statements were 'false' or had 'serious doubts' about their truth and a 'reckless disregard' for whether they were false"—are "merely legal conclusions, which must be backed by well-pled facts." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012).

"[A]n insufficient allegation of fraud or mistake under Rule 9(b) is subject to the liberal amendment provisions of Federal Rule of Civil Procedure 15, and courts have applied the two rules together." 5A A. Benjamin Spencer, *Federal Practice and*

6

*Procedure* § 1300, Westlaw (database updated April 2022). "The result is that in most instances, when a motion based on a lack of sufficient particularity under Rule 9(b) is granted, . . . it will be with leave to amend the deficient pleading." *Id.*

### III. Discussion

### A. Negligent Misrepresentation (Count III)

Pursuant to Maine law, a person is liable for pecuniary loss caused by negligent misrepresentation if, "in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, [he] supplies false information for the guidance of others in their business transactions" on which the others justifiably rely, and the person "fails to exercise reasonable care or competence in obtaining or communicating the information." *Enercon v. Glob. Comput. Supplies, Inc.*, 675 F. Supp. 2d 188, 197 (D. Me. 2009) (cleaned up).

Synergy alleges that Atrium "failed to exercise due care communicating information to Synergy, . . . which Synergy justifiably relied [on] and acted on as true." FAC ¶ 100. Synergy elaborates that Atrium failed to "properly, truthfully, and accurately describe" its (1) "intentions with regard to the Purchase Orders and the production of FOCUSfactor, and the extent of the delays" in production and delivery, (2) "priorities with respect to the production of Atrium's own products over the production of FOCUSfactor," and (3) "intentions to discontinue production of FOCUSfactor." *Id.* ¶ 101.

Atrium seeks the dismissal of Synergy's claim for negligent misrepresentation on the grounds that it fails to (1) "plead facts that, if proven, could establish Synergy's

7

reasonable reliance on an actionable misrepresentation or omission of material fact" or (2) meet the Rule 9(b) pleading standard, which Atrium argues applies when "the fraud and negligent misrepresentation claims are based on the same core set of factual averments." MTD at 14.[3] I am unpersuaded.

As a threshold matter, Atrium falls short of showing that Synergy's negligent misrepresentation claim is subject to Rule 9(b). Atrium cites authority from the First Circuit and this Court for the proposition that Synergy's claim of negligent misrepresentation is grounded in intentionally fraudulent conduct. *See id.* at 16 (citing *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 & n.4 (1st Cir. 2009); *Hayduk*, 775 F.2d at 443; *Redzone Wireless, LLC v. NETGEAR, Inc.*, No. 2:16-cv-00595-JDL, 2018 WL 2770636, at *4 (D. Me. June 8, 2018)).

However, as Synergy rejoins, *Cardinale* and *Hayduk* are distinguishable, and this case aligns with *Enercon*, *see* Plaintiff's Objection ("Opposition") (ECF No. 22) at 16-17, in which this Court held Rule 9(b) inapplicable to a claim of negligent misrepresentation that "remain[ed] plausible absent allegations of fraud," *Enercon*, 675 F. Supp. 2d at 197.

---

[3] At oral argument, Atrium's counsel sought dismissal of Synergy's negligent misrepresentation claim on the alternative basis that, even if the Court deemed Rule 9(b) inapplicable, the claim did not meet the more liberal pleading standard of Rule 8(a)(2). Because this point was both untimely raised and cursorily made, it is waived. *See, e.g.*, *United States v. Pizarro-Berríos*, 448 F.3d 1, 5 (1st Cir. 2006) ("[E]xcept in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (cleaned up)).

In *Cardinale* and *Hayduk*, the First Circuit held that tort claims were subject to Rule 9(b)'s particularity requirement when *the claims at issue* explicitly asserted fraudulent conduct. *See Cardinale*, 567 F.3d at 14 (holding that a claim for tortious interference with prospective business opportunities was subject to Rule 9(b) when it "explicitly assert[ed] 'fraudulent conduct and misrepresentations'" and, thus, "fraudulent misrepresentation" was the "lynchpin" of the claim); *Hayduk*, 775 F.2d at 443 (holding that conspiracy claims were subject to Rule 9(b) when, "[i]n the pleadings themselves, the conspiracy alleged" was "directly linked to the fraud allegations"; for example, that the defendants had conspired to "'cheat[]'" and "'defraud'" the plaintiffs).

In this case, by contrast, Synergy's claim of negligent misrepresentation is not grounded in fraudulent conduct. Rather, Synergy alleges that Atrium "failed to exercise due care communicating information" when it did not "properly, truthfully and accurately" or "fairly" describe (1) the extent of delays in its production and delivery of FOCUSfactor, (2) its prioritization of its own products, and (3) its intent to discontinue manufacturing FOCUSfactor. FAC ¶¶ 100-01.

As in *Enercon*, although Synergy's claim of negligent misrepresentation derives from the same core set of facts as its fraud claim, its tort claim "remains plausible absent allegations of fraud." *Enercon*, 675 F. Supp. 2d at 197. In *Enercon*, the Court reasoned that the defendant's false representation that the plaintiff needed to renew software licenses plausibly could have stemmed from the defendant's employee's "[n]egligence and perhaps inexperience." *Id*. at 198. Similarly, in this

9

case, Atrium's allegedly false representations at weekly meetings that it was prioritizing and continuing to manufacture FOCUSfactor and that deliveries were imminent, *see* FAC ¶¶ 61-62, plausibly could have stemmed from negligence in the form of a failure to investigate the true state of affairs before making those assurances.[4]

Atrium also fails to demonstrate its entitlement to dismissal of Synergy's negligent misrepresentation claim on the basis that Synergy fails to plead facts sufficient to establish its "reasonable reliance on an actionable misrepresentation or omission of material fact." MTD at 14. Atrium contends that, to the extent Synergy's claim is based on omissions, it fails as a matter of law because there is no duty to disclose information to a business partner, and to the extent based on communications, it falls short of demonstrating reasonable reliance. *See* MTD at 14-16.

Yet, the gravamen of Synergy's claim of negligent misrepresentation is not that Atrium failed to communicate, but that it failed to exercise due care in communicating. *See* Opposition at 15; FAC ¶¶ 100-01. And the FAC is not devoid of allegations sufficient to support reasonable reliance: Synergy alleges that Atrium assured it that the manufacturing of FOCUSfactor products was continuing, deliveries were imminent, and Atrium was prioritizing its orders—representations

---

[4] As Atrium notes, *see* Defendant's Reply ("Reply") (ECF No. 23) at 6-7, Synergy failed to address the *Redzone* case, *see* Opposition at 16-17. This is not dispositive in Atrium's favor. *Redzone* is distinguishable in that the plaintiff in that case seemingly did not contest, and the Court did not consider, the propriety of the application of Rule 9(b) to its negligent misrepresentation claim. *See Redzone*, 2018 WL 2770636, at *4-5.

that Synergy at least initially relied on because they were consistent with the parties' twenty-year course of dealing. *See* FAC ¶¶ 22, 61-63.[5]

The Court, accordingly, should deny Atrium's motion to dismiss Count III.

### B. Fraud (Count IV)

Pursuant to Maine law, to state a claim of fraudulent misrepresentation, a plaintiff must allege that (1) "the statement was knowingly false;" (2) the defendant "made the false statement with the intent to deceive;" (3) "the statement was material" to the plaintiff's decision; (4) the plaintiff "reasonably relied on the statement"; and (5) the plaintiff was "injured as a result of [its] reliance." *J.S. McCarthy Co. v. Brausse Diecutting & Converting Equip., Inc.*, 340 F. Supp. 2d 54, 58 (D. Me. 2004) (cleaned up).

To state a claim of fraudulent concealment, a plaintiff must allege "(1) a failure to disclose, (2) a material fact, (3) where a legal or equitable duty to disclose exists, (4) with the intention of inducing another to act or to refrain from acting in reliance on the non-disclosure, and (5) which is in fact relied upon to the aggrieved party's detriment." *Furniture, Mattresses & More LLC v. Texas Rustic, Inc.*, No. 1:19-cv-00154-NT, 2020 WL 2830981, at *2 (D. Me. May 29, 2020). "Where there is no affirmative misrepresentation by the defendant, in order to prove fraud a plaintiff

---

[5] Atrium further argues in passing that Synergy's claim of negligent misrepresentation, like its fraud claim, pleads "no set of facts by which . . . scienter can be inferred." MTD at 16. This point, "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," is "deemed waived." *Zannino*, 895 F.2d at 17 (cleaned up). In any event, in adopting the version of the tort of negligent misrepresentation set forth in the Restatement (Second) of Torts, the Law Court described it as "reflect[ing] a well-reasoned exception to the scienter requirement traditionally applicable in fraud actions." *Enercon*, 675 F. Supp. 2d at 193.

must demonstrate an active concealment of the truth or a special relationship that imposes a duty to disclose on the defendant." *Kezer v. Mark Stimson Assocs.*, 1999 ME 184, ¶ 23, 742 A.2d 898, 905. "'Active concealment of the truth' connotes steps taken by a defendant to hide the true state of affairs from the plaintiff." *Id.*, 1999 ME 184, ¶ 24, 742 A.2d at 905.

While Synergy presses a single fraud claim (Count IV), its counsel clarified at oral argument that it pursues claims of both fraudulent misrepresentation and fraudulent concealment and, as to the latter claim, theories of both active concealment of the truth and the existence of a special relationship imposing a duty of disclosure. Atrium seeks dismissal of Count IV primarily on the basis that it falls short of meeting Rule 9(b)'s standards. *See* MTD at 7-14. I agree.

Synergy alleges that Atrium "repeatedly and falsely represented and communicated" to it that (1) "deliveries of product for the pending Purchase Orders were imminent," (2) "Atrium was prioritizing the production of FOCUSfactor so that it could timely produce and deliver the FOCUSfactor Products as requested in the Purchase Orders and consistent with the parties['] course of dealing," and (3) "the delivered product would conform to the product descriptions." *Id.* ¶ 103. Atrium allegedly did so to "induc[e] Synergy to continue to do business with Atrium, and to gain a market advantage with regard to Atrium's own competitive products." *Id.* ¶ 106.

Synergy alleges, on "information and belief," that Atrium (1) unilaterally stopped the manufacturing process for Synergy's products so that it could utilize its

12

materials and manufacturing equipment to produce more of its own products instead of those of Synergy and (2) knew in late spring or early summer 2020 (but did not disclose to Synergy) that it would cease its contract manufacturing work for Synergy in 2022. *Id*. ¶¶ 58-59. Had Synergy known the truth, it "would have sought an alternative third party manufacturer in the Spring or Summer 2020, and it would not have continued to submit purchase orders to Atrium." *Id*. ¶ 109.

While Synergy details the purchase orders at issue, it identifies neither the speaker/author nor the precise time and place of alleged fraudulent misrepresentations. *See* FAC ¶¶ 38-83; *Dumont*, 934 F.3d at 38 (a party must state with particularity the circumstances constituting fraud, which "generally consist of the who, what, where, and when of the allegedly misleading representation") (cleaned up). For example, Synergy alleges that (1) Atrium began to inform it in "early summer 2020" that manufacture of its products "was delayed in some respect"; (2) when Synergy "[i]nitially . . . inquired about the status of Purchase Orders during the weekly meetings of Atrium and Synergy representatives," Atrium informed it that manufacture of the products "was continuing" and deliveries "were imminent"; and (3) "[a]s the delays continued," Synergy "continued to inquire about pending orders, and "[r]epresentatives of Atrium, including high-level officers . . ., advised . . . that Atrium was prioritizing" Synergy's pending purchase orders. *Id*. ¶¶ 60-62. It is unclear who made these representations and precisely when and where.[6]

---

[6] Synergy supplies some of the missing information in its brief. *See* Opposition at 3 n.1, 4 nn.2-3, 8. However, as Atrium notes, *see* Reply at 3-4 & n.2, "[f]actual allegations made for the first time in a responsive memorandum are not properly considered in evaluating the sufficiency of a complaint

Synergy likewise fails to plead its claim of fraudulent concealment with sufficient particularity on theories of either active concealment of the truth or the existence of a special relationship.

As concerns the first theory, Synergy relies on Atrium's alleged fraudulent misrepresentations to demonstrate active concealment. *See* Opposition at 7-8. However, those allegations are not pleaded with particularity for the reasons discussed above. As concerns the second theory, Synergy's counsel contended at oral argument that the parties had a special relationship by virtue of their lengthy (twenty-year) relationship. Yet, "Maine law defines a 'special relationship' as a relationship giving rise to an affirmative duty to aid and protect, such as the relationship between a common carrier and passenger, employer and employee, parent and minor child, or innkeeper and guest." *Mansir v. United States*, 299 F. Supp. 3d 203, 213 (D. Me. 2018) (cleaned up). A longtime business relationship plainly does not suffice.

Finally, for purposes of both fraud claims, the key facts on which Synergy relies to demonstrate Atrium's state of mind—that, on information and belief, Atrium (1) unilaterally stopped its manufacture of Synergy's products to prioritize its own brand and (2) failed to disclose its plan to cease manufacturing products for Synergy in 2022, *see* FAC ¶¶ 58-59—fall short of meeting applicable pleading standards. As Synergy acknowledges, *see* Opposition at 3 n.1, even pursuant to the more liberal Rule 8(a)(2) standard applicable to pleading scienter, when "allegations are based on

---

under Rule 12(b)(6)," *Winne v. Nat'l Collegiate Student Loan Tr. 2005-1*, No. 1:16-cv-00229-JDL, 2017 WL 3573813, at *6 (D. Me. Aug. 17, 2017).

information and belief, supporting facts on which the belief is founded must be set forth in the complaint," *Hayduk*, 775 F.2d at 444.[7]

The Court, accordingly, should grant Atrium's motion to dismiss Count IV.

### C. Remedy

For the reasons stated above, I recommend that Synergy be allowed a reasonable period of time to amend its complaint. In its Opposition, Synergy also sought a seventy-five day period in which to engage in discovery and either dismiss or amend its fraud claim were the Court to deem that claim deficiently pleaded. *See* Opposition at 14. However, at oral argument, Atrium's counsel posited that missing details of who, what, where, and when were within Synergy's control given Synergy's presence at the weekly meetings during which the misrepresentations allegedly were made, and Synergy's counsel did not disagree. Moreover, while Synergy's counsel noted that the parties were engaged in discovery, he did not cogently identify any particular discovery needed to amend the complaint. On the showing made, I see no reason to provide an express period of discovery in conjunction with the provision of an opportunity to amend the complaint.[8]

### IV. Conclusion

For the foregoing reasons, I recommend that the Court **GRANT** the MTD as to Count IV and **DENY** it as to Count III, **DISMISS** Count IV without prejudice, and

---

[7] Synergy indicates that it is prepared to amend paragraphs 58 and 59 of its complaint, which were pleaded on information and belief, to explain that it obtained that information from two specific individuals through emails and a phone call at certain times. *See* Opposition at 3 n.1.

[8] At oral argument, Atrium's counsel contended that Synergy should be judicially estopped from amending its complaint to enlarge the time frame at issue beyond the parameters of the purchase orders identified in the FAC. At this early stage of the proceedings, I decline to recommend that the Court do so.

**DIRECT** that Synergy file a motion to amend its complaint, together with its proposed amended complaint, no later than two weeks from the date of the Court's order, failing which Count IV of the Complaint will be dismissed with prejudice.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: February 27, 2023.

/s/ Karen Frink Wolf
United States Magistrate Judge